# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA OROPEZA DE ARIAS, obo MARCO ANTONIAS A. L.,[1]<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,[2]<br><br>Defendant. | Case No. 5:18-cv-02183-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

    Susana Oropeza De Arias filed this action on behalf of the decedent, Marco Antonias A. L., seeking review of the Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, Commissioner of the Social Security Administration, is substituted as the proper defendant in this action. *See* Fed. R. Civ. P. 25(d).

# BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since September 19, 2014. Plaintiff's applications were denied initially and upon reconsideration. (Administrative Record ["AR"] 114-118, 124-128.) A hearing took place on May 12, 2017 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 37-75.)

In a decision dated February 5, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc desiccation at L3-4, L4-5, and L5-S1 with mild to moderate spinal canal and bilateral neural foraminal stenosis; degenerative disc disease of the cervical spine; and right and left shoulder impingement. (AR 23.) The ALJ determined that Plaintiff's residual functional capacity ("RFC") included the ability to perform light work with the following limitations: he is able to lift, carry push and pull 20 pounds occasionally and 10 pound frequently; sit and stand/walk six hours in an eight-hour workday with normal breaks; frequently climb ramps and stairs; occasionally climb ropes, ladders, and scaffolds; frequently balance stoop, kneel, crouch, and crawl; should avoid concentrated exposure to hazards and vibration; and frequently reach bilaterally in all directions. (AR 24.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform his past relevant work. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 30-31.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-8), rendering the ALJ's decision the final decision of the Commissioner.

# DISPUTED ISSUES

1. Whether the ALJ properly considered the evidence in assessing Plaintiff's RFC.

2. Whether the ALJ properly rejected Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**I.    Medical Record**

The ALJ summarized the medical record, noting evidence of the medically determinable impairments of left knee bursitis, borderline pes cavus of the right foot, borderline hepatomegaly, hepatic steatosis with periportal sparing, and rash, but found these impairments were not severe. (AR 24, citing AR 439-440, 480, 486.)[3]

With regard to Plaintiff's severe impairments, the ALJ found that Plaintiff had a history of degenerative changes at the lumbar spine. (AR 25.) The ALJ discussed the October 2014 MRI which revealed degenerative disc desiccation at L3-4, L4-5, and L5-SI; small central disc protrusion situated on top of a disc bulge at L4-5 with mild to moderate spinal canal and bilateral neural foraminal stenosis; disc bulge at L3-4 with mild to moderate bilateral neural foraminal stenosis; and enlarged root

---

[3] Plaintiff does not contend that the ALJ erred in his non-severity finding.

sleep cyst associated with right S2 nerve roots within the sacral plexus, of unclear significance. (AR 25, citing AR 367-368.)

From January 2014 through November 2014, Plaintiff was treated by Philip A. Delgado, M.D., for chronic low back pain. Treatment consisted of prescription pain medication. (AR 26, citing AR 376-381.)

An x-ray of Plaintiff's cervical spine taken in February 2015 showed narrowing of C6-7. (AR 372.) An x-ray of Plaintiff's bilateral shoulders taken the same date was unremarkable. (AR 373.)

A June 2015 follow-up examination with Dr. Delgado revealed increased pain in bilateral shoulders. Plaintiff's gait and stance were normal. No other positive findings were noted. Plaintiff was diagnosed with arthralgia of the right and left shoulder region, intervertebral cervical disc disorder, herniated disc at L3-4 and L4-5, cervical neuritis. (AR 374-375.)

Dr. Delgado completed a General Medical Evaluation in September 2015. He indicated that Plaintiff exhibited decreased musculoskeletal range of motion and a careful gait, but no atrophy, normal sensation, and 5/5 motor strength. (AR 383-384.)

The ALJ noted that from January 2015 to December 2015, Plaintiff was treated for herniated disc at the lumbar spine, lumbago, stenosis at the lumbar spine, arthralgia of the right and left shoulder region, cervical neuritis, and cervical disc disorder. Physical examinations during this period, however, were limited. The positive findings included increased pain in the bilateral shoulders, left greater than right against resistance. The ALJ noted that Plaintiff exhibited a normal gait, his stance was normal, and Plaintiff did not appear in any acute distress or discomfort. Treatment consisted of refilling Plaintiff's prescription of Norco for pain. (AR 26, citing AR 374-376, 447-476.)

An MRI of Plaintiff's cervical spine performed in August 2015 showed mild to moderate degenerative changes with mild to moderate spinal canal stenosis with moderate to severe right and mild to moderate left-sided neural foraminal stenosis at

C5-6; and left paracentral four-millimeter disc osteophyte complex at C6-7 resulting in mild to moderate spinal canal stenosis with moderate to severe left and mild to moderate right-sided neural foraminal stenosis. (AR 435-436.)

An MRI of Plaintiff's left shoulder performed in September 2015 revealed severe distal supraspinatus tendinopathy with a five by five millimeter, concealed intrasubstance delaminating tear involving the anterior to mid insertional footplate; and mild anterior downward sloping acromion, prominence of the coracoacromial ligament and hypertrophy of the acromioclavicular joint contributing to narrowing of the acromial/supraspinatus outlet. (AR 431-432.) An MRI of Plaintiff's right shoulder showed severe distal supraspinatus tendinopathy with areas of small, intrasubstance tears and the possibility of a small, low-grade articular surface partial tear posteriorly, with no retraction or atrophy, and moderate to severe distal infraspinatus tendinopathy; mild anterior downward sloping of the acromion, prominence of the coracoacromial ligament and degenerative/hypertrophic changes of the acromioclavicular joint contributing to narrowing of the acromial/ supraspinatus outlet; and subdeltoid/subacromial bursitis. (AR 433-434.)

The ALJ noted that from March 2015 to March 2016, Plaintiff was treated for degenerative disc disease of the cervical and lumbar spine, as well as bilateral shoulder rotator cuff tears. Positive physical findings included impingement and painful range of motion of the bilateral shoulders; spasm, painful and limited range of motion of the lumbar and cervical spine; positive straight leg raising; tenderness to palpation at the cervical region. In February and March 2016, rotator cuff repair surgery was recommended. (AR 27, citing AR 404-412.) However, the ALJ noted, "there is no evidence in the record demonstrating [Plaintiff] followed up with this suggested surgical treatment." (AR 27.) In January and March 2017, Plaintiff's treatment consisted of refills of pain medication. (AR 441-443.)

The ALJ also discussed the September 2015 consultative orthopedic evaluation performed by Vicente R. Bernabe, D.O. (AR 28-29.) Dr. Bernabe noted

that he had reviewed MRI results from October 2014. Dr. Bernabe observed that Plaintiff was in no acute distress, and moved freely in and out of the office and the examination room without the use of an assistive device. Plaintiff's gate was normal, and he was able to toe and heel walk. Straight-leg raising was negative bilaterally in the supine and seated position. Range of motion of the neck was normal. Examination of the thoracic spine was normal as was examination of the upper and lower extremities was normal. Sensation, reflexes, and motor strength were all normal. The only positive findings consisted of tenderness to palpation at the cervical thoracic junction and the lumbosacral junction and decreased range of motion of the back. Dr. Bernabe diagnosed Plaintiff with degenerative disc disease of the cervical and lumbar spine. He opined that Plaintiff was able to lift and carry no more than 50 pounds occasionally and 25 pounds frequently; push and pull without limitation; walk and stand six hours in and eight-hour day; frequently bend, kneel, stoop, crawl, and crouch; frequently climb ladders and work at heights; sit for six hours in an eight-hour day; and had no restrictions on manipulative activities. (AR 386-391.)

The ALJ noted that Robert Hughes, M.D., the State agency medical consultant on initial review, found there was insufficient evidence to evaluate Plaintiff's claim. (AR 76-89.) At the reconsideration level, R. Dwyer, M.D., agreed with and adopted Dr. Bernabe's opinion regarding Plaintiff's functional limitations. (AR 92-111.)

## II. The ALJ's RFC Assessment

The ALJ is responsible for determining a claimant's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC because he omitted or failed to properly consider medical evidence supporting Plaintiff's claim of disability. (ECF No. 27 at 3.)

In support of his contention, Plaintiff summarizes the entire medical record without identifying specific evidence he alleges the ALJ failed to consider. (*See* ECF

No. 27 at 4-7.) In fact, the bulk of the records cited by Plaintiff consist of the same evidence discussed above – i.e., x-rays and MRIs of Plaintiff's back and shoulders, and treatment notes regarding his back and shoulder impairments. (ECF No. 27 at 4-7, citing AR 404-412, 431-436.) Plaintiff also cites the treatment note from March 2016 reflecting his complaint of left knee pain after which he underwent aspiration to remove fluid from that knee. (ECF No. 27 at 7, citing AR 480.) Contrary to Plaintiff's suggestion, the ALJ explicitly considered all of the foregoing evidence. (*See* AR 24-29.) Plaintiff's argument amounts to a disagreement as to how the evidence should be interpreted. However, so long as the ALJ's interpretation of the record is rational and supported by substantial evidence, which it is here, the Court may not disturb it. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.").

Plaintiff does point to four pieces of evidence that are not explicitly discussed in the ALJ's decision: (1) a 2010 CT scan of Plaintiff's lumbar spine revealing foraminal stenosis greatest at L5-S1 on the right and multi-level degenerative disc disease, which Plaintiff argues shows his back condition "is chronic and long standing, but progressively worsening with time" (ECF No. 27 at 4-5, citing AR 369-370); (2) a treatment note from October 2, 2014, in which Plaintiff complained of bilateral eye pain with decreased vision (AR 379); (3) treatment notes from October and December 2015 reflecting a diagnosis of chronic kidney disease (AR 392, 400); and (4) a March 21, 2016 ultrasound of Plaintiff's left knee showing a possible hematoma, complex cyst or inflammatory process (AR 438).

An ALJ is not required to discuss every piece of evidence in the record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("[t]he ALJ is not required to discuss evidence that is neither significant nor probative"); *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ does not need to discuss every piece of evidence," and the "ALJ is not required to discuss evidence that is neither significant

nor probative") (citation and quotation marks omitted). For the following reasons, the evidence Plaintiff identifies is not significant and, therefore, the ALJ did not err in failing to affirmatively address it.

With respect to Plaintiff's left knee, the ALJ considered the March 28, 2016 treatment notes based upon that ultrasound, including the findings of bursitis and swelling. The ALJ determined that Plaintiff's knee impairment was not severe, a conclusion that Plaintiff does not contest. Most importantly, the ultrasound itself does not reveal anything different than the evidence the ALJ mentioned. (*See* AR 24, citing 480.)

Similarly, with respect to the CT scan of Plaintiff's lumbar spine, not only is the record dated four years prior to Plaintiff's alleged date of onset, but the ALJ considered at length the more extensive MRI results. Furthermore, the ALJ affirmatively concluded that Plaintiff suffered from a chronic longstanding back impairment. Plaintiff fails to explain, and it is not evident to the Court, how the 2010 CT scan adds anything to the picture of Plaintiff's back impairment condition not already considered by the ALJ.

Next, while Plaintiff includes conclusory reference to a treatment note reflecting a single complaint of eye pain and to notes that include a diagnosis of chronic kidney disease, he fails to allege or point to any evidence indicating that either condition resulted in any functional limitation. Furthermore, with regard to kidney disease, the evidence Plaintiff points to consists of treatment notes listing "chronic kidney disease stage III (moderate)" under "Assessments." (*See* AR 392, 400.) In one of those treatment notes, Peter Lac, M.D. (the nephrologist who diagnosed Plaintiff with kidney disease), opined that Plaintiff's renal dysfunction "may have been due mostly from hypothyroidism. His renal function has improved." (AR 394.) Dr. Lac suggested that treating Plaintiff's hypothyroidism would improve or resolve his kidney disease. Plaintiff does not cite any other medical evidence revealing complaints about, or treatment for, kidney disease. Perhaps most

8

importantly, Dr. Lac did not assess any limitations as a result of the diagnosis. "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). In sum, the ALJ did not commit error in failing to discuss the foregoing evidence.

Plaintiff also contends that the ALJ erred in his RFC assessment because he rejected the opinions of Dr. Bernabe and Dr. Dwyer, the State agency medical consultant. (ECF No. 27 at 4.) As the Commissioner points out, however, both Dr. Bernabe and Dr. Dwyer opined that Plaintiff was capable of full-time medium exertional work. Thus, their opinions regarding Plaintiff's ability to work were *less* restrictive than the ALJ's. Because the ALJ assessed a more restrictive RFC than Drs. Bernabe and Dwyer, any error in rejecting these opinions is harmless. *See Hall v. Colvin*, 2016 WL 3457756, at *5 (C.D. Cal. June 22, 2016) (any error in rejecting physician's opinion would be harmless because ALJ adopted a more restrictive RFC than physician's opinion); *Herrera v. Colvin*, 2014 WL 3572227, at *5 (C.D. Cal. July 21, 2014) (same); *see generally Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmless when it is "inconsequential to the ultimate nondisability determination") (citation omitted).

Plaintiff further contends that the ALJ's RFC assessment is erroneous because there is no medical expert opinion supporting it. (ECF No. 27 at 7.) An RFC is a legal assessment based upon all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1545, 416.945. It is the ALJ's responsibility to determine a claimant's RFC, and Plaintiff has provided no authority for his implicit suggestion that an ALJ's assessment cannot stand without a corroborating physician's opinion. *See generally Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"); *Eldridge v. Colvin*, 2013 WL 704306, at *6 (E.D. Wash. Feb. 26, 2013) ("The RFC and disability determination are issues reserved to the Commissioner and physician opinions on those issues are not controlling or even entitled to special significance.")

Finally, Plaintiff asserts that "the problem" with the opinions of Drs. Bernabe and Dwyer is that they were rendered in September and October 2015, so the physicians did not have the opportunity to consider medical evidence generated after that date. (ECF No. 27 at 7-8.) Plaintiff fails to explain how this assertion is of any consequence to his claim that the ALJ improperly evaluated the evidence. As mentioned above, the ALJ rejected the opinions of Drs. Bernabe and Dwyer, and the ALJ's reason for doing so was based upon a conclusion similar to Plaintiff's argument. That is, the ALJ noted the objective medical evidence of Plaintiff's treatment for degenerative disc disease and degenerative changes of his bilateral shoulders and concluded that the evidence demonstrated that Plaintiff's impairments were more severe and more limiting than the physicians opined. (AR 29.) Thus, assuming it is meritorious, Plaintiff's argument that the opinions of Drs. Bernabe and Dwyer were not reliable because they were based upon incomplete evidence would have no effect on the ALJ's ultimate decision. *See generally Molina*, 674 F.3d at 1122.

For the foregoing reasons, the ALJ's RFC assessment must be affirmed. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

### III. The ALJ's Credibility Determination

Plaintiff contends that the ALJ erred in rejecting his testimony regarding his subjective symptoms and limitations. (ECF No. 27 at 8-10.)

**A. Plaintiff's Testimony**

Plaintiff alleged that he is unable to work due to his musculoskeletal impairments. He testified that his limitations stem primarily from lower back pain. (AR 55.) Plaintiff's neck, lower back, shoulders, and knees have progressively worsened with time. (AR 53-54.) He has had fluid removed from his knee. (AR 52.) Sometimes pain radiates from his neck into his arms and includes numbness and/or

tingling. (AR 55.) Numbness also radiates from his low back into his legs. (AR 55.) Plaintiff's physician discussed surgery for his shoulders if injections did not help. Plaintiff underwent injections into his shoulders three times about eight or nine months prior to the hearing, but the injections did not help his symptoms. (AR 55-56.)

Plaintiff further testified that he is able to stand or walk for about 15 to 20 minutes before he needs to sit or lie down. (AR 54.) He is unable to bend down to lift. While Plaintiff believed he could lift 20 pounds, he was not capable of doing such lifting every 15 minutes of the workday. (AR 56-57.)

When asked how he spends his time, Plaintiff answered, "I get up, I lay down, I help around the house a little bit… I rest." (AR 54.) According to Plaintiff, he lies down for more than 4 hours in an 8-hour period. While he has good days and bad days, even on good days, Plaintiff always has to lie down some time during the day. (AR 57-58.)

### B. Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d

487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim*, 763 F.3d at 1163; *Molina*, 674 F.3d at 1112.

**C. Analysis**

The Commissioner argues that the ALJ's credibility determination is supported by the following legally sufficient grounds: Plaintiff's subjective complaints were (1) inconsistent with his conservative treatment; (2) inconsistent with his failure to pursue recommended treatment; and (3) inconsistent with the medical records. (ECF No. 28 at 7-9.)

1. <u>Conservative treatment</u>

The ALJ observed that despite his allegations of disabling pain and symptoms related to his neck, back, and shoulders, Plaintiff had "not obtained the type of medical treatment one would expect for a totally disabled individual." (AR 27.) The ALJ noted that Plaintiff's treatment had been essentially routine and conservative, consisting primarily of prescribed pain medication. (AR 27.) The ALJ pointed out that Plaintiff denied that his impairments had ever resulted in hospitalization or surgery. He also found it significant that, no doctor had prescribed Plaintiff an assistive device due to the severity of his back-pain symptoms. The ALJ reasoned that "[t]he lack of more aggressive treatment, surgical intervention, or even a referral to and/or regular treatment with a specialist, such as an orthopedist or pain management, suggests that [Plaintiff's] neck, back, and shoulder pain symptoms and related limitations were not as severe as he alleged." (AR 27.)

An ALJ may properly discount a claimant's testimony based on the fact that only conservative treatment has been prescribed. *Parra v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). As the

ALJ here correctly observed, Plaintiff's primary care physician treated Plaintiff's impairments with prescription pain medication.[4] Neither the fact that Plaintiff was prescribed narcotic pain medication nor that he received three injections in his shoulders invalidates the ALJ's characterization of Plaintiff's treatment as conservative. Courts have considered treatment to be fairly characterized as conservative even when narcotic pain medication is paired with additional treatment such as epidural injections. *See Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) (ALJ did not err in relying on conservative treatment to discount claimant's credibility where treatment included prescriptions to Vicodin and Norco and five epidural steroid injections); *Medina v. Colvin*, 2016 WL 633857, at *5 (C.D. Cal. Feb. 17, 2016) (ALJ properly relied upon conservative treatment in making credibility determination where plaintiff was prescribed Vicodin and ibuprofen for back condition); *Stephenson v. Colvin*, 2014 WL 4162380, at *9 (C.D. Cal. Aug. 20, 2014) (ALJ properly discounted credibility based on plaintiff's conservative treatment, which included Vicodin); *Morris v. Colvin*, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility based on conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin). Furthermore, the ALJ properly relied upon evidence that Plaintiff's primary physician did not recommend referral to an orthopedic or pain specialist, and did not recommend any more aggressive treatment such as surgery for Plaintiff's back and neck impairment. *See Miner v. Colvin*, 609 F. App'x 454, 455 (9th Cir. 2015) (ALJ properly relied upon conservative treatment to discount claimant's subjective complaints where "despite [claimant's] allegations that she suffered disabling pain for years, [claimant's] doctors did not recommend surgeries or other aggressive treatments").

---

[4] The Court notes that type and dosage of that medication (Norco 10/325) remained consistent, suggesting that the medication provided relief and that the record does not indicate that Plaintiff suffered adverse side effects. (*See, e.g.*, AR 376 (November 2014), 449 (January 2015), 374 (June 2015), 476 (November 2015).)

### 2. Failure to follow prescribed treatment

The ALJ also concluded that Plaintiff's failure to follow prescribed treatment undermined the credibility of his claims of disabling pain and symptoms. In particular, the ALJ noted the evidence that in February and March 2016, rotator cuff repair was recommended to treat Plaintiff's bilateral shoulder impairments. Nevertheless, the record included no evidence that Plaintiff followed up on the recommended surgery. In addition, the ALJ noted that Plaintiff did not offer, and the record did not suggest, any sufficient explanation for his failure to follow the prescribed treatment. (AR 27-28, citing AR 411-412.)

An ALJ may properly consider evidence of a claimant's failure to follow treatment in assessing the credibility of the claimant's subjective complaints of pain or symptoms. *See Molina*, 674 F.3d at 1113-1114 (concluding that an ALJ may discredit claimant's testimony based on an unexplained or inadequately explained failure to complete a course of treatment). Here, the ALJ could properly infer from the foregoing evidence of Plaintiff's failure to follow up with the recommended surgery that Plaintiff's symptoms were not as severe as he alleged. *See Miner*, 609 F. App'x at 455 (ALJ properly relied on claimant's failure to pursue aggressive treatment to discount claimant's subjective complaints, stating that, "for instance, when surgery was discussed as one of several treatment options for allegedly disabling incontinence, [claimant] chose exercises."); *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider failure to "seek treatment or to follow a prescribed course of treatment" in assessing credibility).

### 3. Inconsistent with medical record

In making his credibility determination, the ALJ also highlighted inconsistencies between Plaintiff's testimony and the medical record. In particular, the ALJ observed that despite Plaintiff's testimony that he was unable to stand for

14

long and needed to lie down, no treating source stated that Plaintiff was disabled or had any physical limitation such as the need to lie down or remain off of his feet. (AR 28.) In addition, the ALJ noted that objective findings did not corroborate Plaintiff's testimony regarding his inability to stand and/or need to lie down. Specifically, the ALJ pointed to physical examinations throughout 2015, which revealed limited positive findings, revealed that Plaintiff exhibited a normal gait, and affirmatively stated that Plaintiff did not appear in any acute distress or discomfort. (AR 28, citing AR 374-375, 447-476.) The ALJ also pointed to Dr. Bernabe's physical examination, which revealed among other things, that Plaintiff had a normal gait, straight-leg raising was negative bilaterally, normal motor strength, and normal sensation in upper and lower extremities. (AR 28, 388-390.)

The ALJ properly relied upon the absence of a corroborating medical opinion and the lack of objective medical findings supporting Plaintiff's testimony in assessing Plaintiff's credibility. *See, e.g., Martin v. Berryhill*, 722 F. App'x 647, 649–650 (9th Cir. 2018) (ALJ properly discounted plaintiff's credibility based upon finding that no physician opinions corroborated the alleged severity of plaintiff's limitations); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (including lack of supporting medical evidence as one factor that an ALJ can rely on in discrediting claimant testimony).

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 10/16/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE